UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN SOTO JR,<br>    a/k/a "BENJI,"<br>REFUGIO VERONICA QUINTERO<br>    MORENO,<br>ANGEL ADAN VALENZUELA<br><br>    Defendants | Case: 1:23-mj-00031<br>Assigned to: Judge Meriweather, Robin M.<br>Assign Date: 2/3/2023<br>Description: COMPLAINT W/ ARREST WARRANT |

**AFFIDAVIT OF SPECIAL AGENT SEAN POLSON
IN SUPPORT OF CRIMINAL COMPLAINT**

I, Sean Polson, Special Agent of the Federal Bureau of Investigation (FBI), being first duly sworn, depose and state as follows:

1. I am an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since June 26, 2016, and I am currently assigned to a Transnational Organized Crime Western Hemisphere Task Force. My experiences as a Special Agent have included, among other things, investigations of narcotics and money laundering cases involving offenses enumerated in Title 18 and Title 21 of the United States Code. As a Special Agent with the FBI, I have participated in over twenty-five investigations, during which I have conducted physical surveillance, electronic surveillance, telephone and social media exploitation, written and executed search warrants and criminal complaints, and interviewed cooperating witnesses

1

and informants. I have been trained in various aspects of law enforcement, particularly the investigation of narcotics and money laundering offenses. In preparing to become a Special Agent, I obtained a Master's Degree in Forensic Science with an emphasis on biology and chemistry, and I attended the Basic Field Training program at the FBI Academy in Quantico, Virginia. I have not included every detail of every aspect of my training, education, and experience, but have highlighted those areas most relevant to this application.

3. Through these investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the manner and means in which controlled substances are used, possessed, packaged, imported, and distributed. In addition, I am familiar with the manner in which narcotics proceeds are collected, transported, and laundered. Furthermore, I am familiar with the manner in which subjects of such investigations utilize internet, cellular telephones, encrypted devices, and social media platforms to communicate with their narcotics and money laundering associates and to facilitate the commission of their narcotics and money laundering offenses. I am aware narcotics traffickers commonly use multiple phones in order to conduct business.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, including (a) oral and written reports that I have received directly or indirectly from other law enforcement officers, (b) results of physical surveillance conducted by your affiant and other law enforcement officers, which have been reported to me either directly or indirectly; (c) information provided by confidential sources and cooperating witnesses; (d) a review of telephone records, pen register records, and subscriber information; (e) information derived from administrative subpoenas and grand jury subpoenas; (f) records obtained from law enforcement and open

source databases; (g) controlled purchases and/or seizures of narcotics and/or narcotics proceeds; (h) recorded phone calls, text messages, and 3rd party messaging systems like Facebook and WhatsApp; (i) my training and experiences as an FBI Special Agent; and (j) the training and experience of other law enforcement officers involved in this investigation.

5. This affidavit is intended to show merely that there is sufficient probable cause for the Court to authorize a criminal complaint and does not set forth all my knowledge about this matter.

6. All dates, times, and amounts stated herein are approximate.

7. This affidavit is made in support of a criminal complaint charging Benjamin Soto, Jr. ("SOTO"), Refugio Veronica Quintero Moreno ("QUINTERO"), and Angel Adan Valenzuela ("VALENZUELA") with (1) conspiring to import more than five kilograms of cocaine, more than 500 grams of methamphetamine, and more than 400 grams of N-phenyl-N-[1-( 2-phenylethyl ) -4-piperidinyl] propenamide (fentanyl) into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), (F), (H), and 963; and (2) conspiring to distribute and possess with intent to distribute methylphenidate (Ritalin), more than five kilograms of cocaine, more than 500 grams of methamphetamine, and more than 400 grams of N-phenyl-N-[1-( 2-phenylethyl ) -4-piperidinyl] propenamide (fentanyl), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), (vi), (viii), and 846.

8. On March 22, 2022, a grand jury sitting in this District returned an indictment charging SOTO, QUINTERO, and VALENZUELA with these same offenses.  SOTO and QUINTERO were arrested on warrants associated with the indictment on April 6, 2022, and VALENZUELA was arrested on April 7, 2022.

9. After a hearing on February 2, 2023, assigned U.S. District Judge Richard J.

Leon said he will dismiss the indictment without prejudice for a violation of the Speedy Trial Act. Judge Leon said he would issue an Order dismissing the indictment without prejudice on either Friday, February 3, 2023 or Monday, February 6, 2023.

**PROBABLE CAUSE**

A.  Narcotics Shipping Scheme

10. SOTO and QUINTERO are former FedEx employees, based in Nogales, Arizona, who worked with numerous drug couriers, including VALENZUELA, to ship cocaine, methamphetamine, and fentanyl trafficked from Mexico into the United States and then distributed throughout the United States, including to the District of Columbia, via the FedEx in Nogales (hereinafter, "FedEx Nogales Ship Center") where SOTO and QUINTERO worked. SOTO, QUINTERO, and VALENZUELA used a shipping scheme in which they covertly sent narcotics under FedEx business accounts belonging to several legitimate companies without the knowledge or authorization of those companies.

11. On or around March 30, 2021, FBI agents seized a FedEx parcel in Galesburg, Illinois, with tracking number 785349336246 that contained approximately five pounds of methamphetamine. Agents learned the package was shipped from a FedEx shipping center located at 1319 N Industrial Park Drive, Nogales, Arizona 85621 (FedEx Nogales Ship Center").

12. Investigators obtained security camera footage from FedEx that showed that FedEx employee, later identified as QUINTERO, generated and affixed the shipping label for the parcel using information obtained from her personal cellular phone while no customers were in the lobby of the FedEx Nogales Ship Center. She was also observed using her cellular phone to take photos of the label. Parcel 785349336246 was shipped priority overnight air, to a residential address, with the return address, "Otis Elevator, 1500 Otis Way, Florence, SC," and was paid for

by Otis Elevator's FedEx business account number 321970273 (the "Otis Elevator account").

13. In August 2021, another parcel shipped from the FedEx Nogales Ship Center was inspected by FedEx security in Tucson, Arizona, and found to contain approximately nine pounds of methamphetamine. This parcel was shipped priority overnight air, to a residential address, with the return address "MKS Instruments Inc, 651 Lowell St, Methuen, MA," and was paid for by MKS Instruments Inc's FedEx business account number 191954718 (the "MKS Instruments account").

14. According to Otis Elevator's publicly available website, otisworldwide.com, and MKS Instruments Inc's publicly available website, www.mksinst.com, both companies are involved in the manufacturing, innovation, and product development for businesses within their specific industries. Otis Elevator and MKS Instrument's Inc.'s customer base appears to be business-to-business. Records received from FedEx for both companies' business accounts showed they both overwhelmingly shipped parcels business-to-business, not business to residential addresses or to FedEx offices to be held for pickup by a customer.

15. In or around the end of August 2021, I approached and interviewed QUINTERO regarding parcel 785349336246. Prior to beginning the interview, QUINTERO was informed that she was not under arrest and free to end the interview at any moment. QUINTERO acknowledged shipping parcel 785349336246 and claimed the information for the label came from a male, who went by the name Danny ("Danny") who was located in Nogales, Sonora. According to QUINTERO, Danny no longer crossed into the United States himself; instead, he sent individuals to deliver the parcels to the FedEx Nogales Ship Center on his behalf. I showed QUINTERO photos of the methamphetamine seized from parcel 785349336246. QUINTERO claimed to be unaware that the parcels shipped from Danny contained methamphetamine.

According to QUINTERO, Danny used to ship parcels through SOTO at the FedEx Nogales Ship Center before SOTO directed Danny to work with QUINTERO to ship parcels.

16. During the interview, I also showed QUINTERO a still shot of FedEx security camera footage showing her using her cellular phone to take a photo of the label. QUINTERO consented to the search of her cellular phone, which revealed assigned telephone number (520) 285-6789. During the consent search of her phone, FBI agents identified WhatsApp conversations between QUINTERO and Danny, as well as conversations between QUINTERO and SOTO's phone number (520) 313-2332.

B.  Narcotics Shipped from FedEx Using FedEx Business Accounts

17. After interviewing QUINTERO, I identified 96 suspicious parcels that had been shipped from the FedEx Nogales Ship Center between August 25, 2021 and November 4, 2021 using priority overnight air under FedEx business accounts to residential or hold for pickup locations, as had the two seized drug parcels described above. Based on my training and experience, I believe that the coconspirators used priority overnight pickup shipping because it is the fastest shipping method, which means that the package is in the possession of FedEx for the shortest time period possible, thereby making identifying and interdicting the packages in that short time period more difficult.

18. Mailing under this scheme went to 22 different states during this time period. Law enforcement intercepted 21 of the 96 parcels, seizing one rock and a total of approximately 63.5 kilograms of controlled substances, including methamphetamine, cocaine, and fentanyl. The fentanyl was in both powder form and in the form of fake OxyCodone 30mg tablets.

19. During this time period, FedEx Nogales Ship Center had three employees who accepted packages from customers, entered the information for the labels, and printed and affixed

6

labels to the packages: SOTO, QUINTERO, and a third employee (hereinafter "Employee"). Below is a table describing the controlled substances seized in these packages:

| Shipping Date | FedEx Employee | FedEx Business Account Used | Contents |
|---|---|---|---|
| 8/25/2021 | SOTO | C.R. Bard/Joffroy Group | Cocaine – 3.024 kg<br>Heroin – 1.03 kg |
| 9/1/2021 | Employee | Phillip-Ando-PMD | Cocaine – 5 kg |
| 9/1/2021 | Employee | Phillip-Ando-PMD | Cocaine – 5 kg |
| 9/2/2021 | Employee | Nemal Electronics | Cocaine – 1.13 kg |
| 9/7/2021 | Employee | KSM Electronics | Cocaine – 2.26 kg |
| 9/7/2021 | Employee | Nemal Electronics | Methamphetamine - 5.57 kg |
| 9/7/2021 | Employee | Nemal Electronics | Fentanyl (pills) – 1.03 kg |
| 9/8/2021 | SOTO/Employee | Motorola Solutions | Cocaine – 1 kg[1] |
| 9/8/2021 | Employee | Panametrics | Methamphetamine - 4.34 kg |
| 9/9/2021 | Employee | Motorola Solutions | Cocaine – 2.12 kg |
| 9/9/2021 | Employee | KSM Electronics | Methamphetamine - 4.42 kg |
| 9/14/2021 | SOTO | MKS Instruments | Rock |
| 10/13/2021 | Employee | Panametrics | Fentanyl (powder) – 4.2 kg |
| 11/2/2021 | QUINTERO | Proval | Ritalin – 102.85 g[2] |
| 11/3/2021 | QUINTERO | Brooks Automation | Methamphetamine – 16.64 kg |
| 11/4/2021 | SOTO | E.H. Wachs | Fentanyl – 1.97 kg |
| 11/4/2021 | QUINTERO | Motorola Solutions | Cocaine – 3 kg[3] |
| 11/4/2021 | QUINTERO | Motorola Solutions | Fentanyl – 1 kg[4] |

21. In my training and experience the rock was packaged in a similar manner as narcotics are packaged. Specifically, the rock was wrapped in cellophane and concealed inside a metal canister. Based on my training and experience and my knowledge of this investigation, I believe that the rock was sent as test package due to the seizures.

22. Based on a review of the FedEx security camera footage, 14 individuals, including

---

[1] The weight listed was the net package weight at the time of seizure. Evidence was shipped to the DEA Laboratory pending testing and total weights without packaging materials.
[2] The Ritalin was contained in four separate packages, which were all seized, and the total weight of the Ritalin was 102.85 g.

[3] The weight listed was the net package weight at the time of seizure.
[4] The weight listed was the net package weight at the time of seizure. Evidence was shipped to the DEA Laboratory pending testing and total weights without packaging materials.

VALENZUELA, provided the FedEx employees with either a sticky note stuck to the parcels or showed their cellular phones before mailing parcels that fit the above pattern (hereinafter, collectively referred to as the "drug couriers").

23. QUINTERO, SOTO, and Employee then used them to generate shipping labels and mail packages covertly under FedEx business accounts to recipients throughout the United States. Security footage revealed that once shipping labels were affixed to the parcels and receipts given to the drug couriers, the drug couriers would take photos of the shipping labels and/or the receipts with the tracking numbers using their personal cellular phones before leaving the FedEx Nogales Ship Center.

24. Shipping and billing records from FedEx revealed 13 FedEx business accounts were used to pay for and ship the 96 suspicious parcels, including those identified in the table above.

25. According to FedEx shipping records, the total number of parcels shipped from these 13 business accounts between January 1, 2020 and March 28, 2022 was 123,555 parcels. Only two percent of the parcels shipped from those accounts during this time period were shipped priority overnight air to residential addresses or to FedEx facilities hold for pickup, as is consistent with the drug shipping scheme described above. Parcels shipped under this scheme were sent to cities across the United States, including at least 25 parcels that were shipped to the District of Columbia.

26. Based upon open source, internet, and Arizona Corporate Commission[5] business

---

[5] Arizona Constitution created the Arizona Corporate Commission (ACC) in 1912 as an agency independent of the legislature, the executive branch or the judiciary. The Commission is an unusual public entity in that only a handful of other states have constitutionally formed commissions. ACC is a state regulatory body charged with several important responsibilities to include governing the offer and sale of securities and investment advice in or from Arizona, licenses investment advisers and their representatives, registers securities dealers and salesman,

searches, nine of the 13 businesses did not have a physical presence within 63 miles of the FedEx Nogales Ship Center.

27.     On March 7, 2022, I interviewed MKS Instruments Inc.'s Associate General Counsel and Senior Director of Global Logistics regarding suspicious parcels shipped under the MKS Instruments Inc. account. They confirmed that MKS Instruments Inc. primarily conducts business-to-business shipping and used FedEx for all domestic shipments. They explained the business account used to pay for the suspicious parcels was a FedEx business account that MKS Instruments Inc. paid monthly. They said MKS Instruments Inc. primarily ships parcels via FedEx ground, not priority overnight air, to save money as priority overnight air is the most expensive shipping method through FedEx. Additionally, MKS Instruments Inc. utilizes an internal software system to generate shipping labels for their parcels. Therefore, any parcel shipped by MKS Instruments Inc. would already have a shipping label affixed to the packages prior to the packages arriving at any FedEx facility. Additionally, MKS Instruments Inc. has a contract for FedEx pickup services. Under this service, a FedEx truck goes to MKS Instruments Inc.'s warehouses and picks up parcels from those sites, rather than MKS Instruments Inc.'s employees delivering packages to FedEx Ship Centers like the FedEx Nogales Ship Center. The Associate General Counsel confirmed that the two identified drug couriers who shipped packages using their account under this scheme were not employed by MKS Instruments Inc.

C. FedEx Employees Handling of Narcotics Parcels

28.     From a review of FedEx's security camera footage, QUINTERO, SOTO, and Employee, processed the 96 suspicious parcels differently than other parcels that they processed at the FedEx Nogales Ship Center. Specifically, FedEx customers were required to show proof

---

regulates several hundred public utilities serving the state, registers corporations and limited liability companies, and enforces regulations to ensure railroad and pipeline safety.

of identification before shipping a parcel, which was not observed on camera for any of the drug couriers. Similarly, drug couriers never paid for their packages, while legitimate customers would. On numerous occasions, drug couriers, such as VALENZUELA, would drop off stacks of FedEx envelopes that had sticky notes with the shipping addresses on them and then leave without paying. QUINTERO and SOTO would generate shipping labels for the FedEx envelopes and affix the shipping labels to the parcels. The drug couriers would then return, take pictures of the shipping labels on each parcel, and sign the FedEx signature pad before taking a copy of the receipt. Additionally, FedEx employees would tape over all seams of the parcels and over shipping labels. This behavior was not observed when the FedEx employees sent legitimate mailings.

      D.      VALENZUELA's Parcel Shipments

      29.      On several occasions, VALENZUELA was observed on FedEx security footage arriving at the FedEx Nogales Ship Center in a red Ford Mustang, bearing Sonora Mexico license plates VUB-191-A. On each occasion, VALENZUELA mailed parcels in the same pattern described above. On September 8, 2021, VALENZUELA exited the driver compartment of the red Ford Mustang with one box and brought the box into the FedEx Nogales Ship Center. The package shipped by VALENZUELA on September 8, 2021 was later seized in Chicago, Illinois by law enforcement and found to contain 4.34 kilograms of methamphetamine.

      30.      On November 2, 2022, VALENZUELA was observed taking empty FedEx envelopes from inside the store, walking out to his red Ford Mustang, and returning to the store moments later with stuffed envelopes. The packages shipped by VALENZUELA on November 2, 2022 were later seized in transit FedEx facilities in Memphis, Tennessee by law enforcement and found to contain 102.85 grams of Ritalin.

31.     On September 14, 2021, VALENZUELA was observed on FedEx security cameras arriving at the FedEx Nogales Ship Center in the red Ford Mustang. VALENZUELA shipped FedEx envelopes in the same manner as previously described. After shipping the FedEx envelopes, VALENZUELA was observed on security cameras placing an unknown amount of U.S. currency into a FedEx envelope, folding the envelope, and sealing it. Afterwards, VALENZUELA walked in the back of the FedEx Nogales Ship Center to speak with QUINTERO and SOTO. VALENZUELA and QUINTERO then went into the back office. Moments later, VALENZUELA was observed walking back into the lobby without the first envelope and placing another unknown amount of U.S. currency into a FedEx envelope, folding the envelope, and sealing it. VALENZUELA handed the second envelope to Employee before leaving the FedEx Nogales Ship Center.

32.     A review of shipping records from one of the compromised business accounts, Proval, showed that 140 parcels were shipped under the Proval account between October 25, 2021 and November 8, 2021, all of which listed VALENZUELA's residential address, 744 W Mesa Verde Dr, Nogales, AZ on the return shipping label. All parcels were shipped priority overnight air. Unlike the other 13 identified business accounts described above and listed in the table above, Proval does not appear to be a legitimate business.

33.     Border crossing information revealed each of the six identified drug couriers, including VALENZUELA, crossed the United States-Mexico border, from Mexico into Arizona, on the same date that they mailed their later-seized narcotics packages at the FedEx Nogales Ship Center.

E.      Arrest of SOTO & QUINTERO

34.     On April 6, 2022, QUINTERO and SOTO were arrested at the FedEx Nogales

Ship Center. During her arrest, QUINTERO was in possession of a black Samsung Galaxy Note 20 assigned telephone number 520-285-6789 ("QUINTERO'S SAMSUNG"), which was the same make and model phone that she had in her possession when I interviewed her in August 2021. SOTO was in possession of two cellular telephones, a Samsung Galaxy S21 assigned telephone number 520-313-2332 ("SOTO'S SAMSUNG"), the same phone number identified as communicating with QUINTERO upon a consent search of QUINTERO'S SAMSUNG in August 2021, and an Apple iPhone 13 Pro assigned telephone number 52-6311965432.

35. A post-arrest Mirandized interview of SOTO was conducted on April 6, 2022. During the interview, SOTO claimed that he could tell the difference between a customer bringing in a regular package and a customer bringing in a drug package. SOTO explained that most of the packages brought into the FedEx Nogales Ship Center were from big companies that had FedEx accounts, not individual customers shipping personal parcels. SOTO and QUINTERO only asked for proof of identification if the customer could not provide a FedEx account number. SOTO said he did not report the drug parcels to FedEx management or law enforcement, because he was told by FedEx management when he started working for FedEx 17 years ago that management knew that there were drug packages being shipped, but the customers were paying customers so to mail the packages anyway. SOTO said he knew VALENZUELA had a FedEx account under the name Transvol[6] which he used to shipp pharmaceutical drugs. SOTO said he knew that Danny shipped pharmaceutical drugs through the FedEx Nogales Ship Center using VALENZUELA's Transvol account. SOTO said Danny had not been back to the FedEx Nogales Ship Center since the border closed due to the pandemic. Instead, Danny sent people like VALENZUELA to send the parcels. SOTO said he was also aware that individuals from the Mail Boxes Paqueteria Correo Store

---

[6] This account was later found to be another FedEx business account belonging to VALENZUELA that was being used under the shipping scheme.

located at 441 N Grand Ave, Suite 4, Nogales, AZ brought drug parcels into the FedEx Nogales Ship Center to be mailed.

36. A post-arrest Mirandized interview of QUINTERO was conducted on April 6, 2022. During the interview, QUINTERO stated that she was aware that Danny shipped pharmaceutical pills through the FedEx Nogales Ship Center but did not know what type. The last time QUINTERO had seen Danny was in May 2020. QUINTERO explained customers would come into the FedEx Nogales Ship Center and either provide an account number or credit card. The customer would advise where the parcel was to be shipped and how fast the customer wanted the parcels to arrive at their final destination. QUINTERO could not ask what was inside the parcel if the parcel was worth less than $500.

F. VALENZUELA's Arrest

37. On April 7, 2022 Customs and Border Protection (CBP) stopped and arrested VALENZUELA at the West Nogales Port of Entry attempting to cross into Mexico. CBP placed VALENZUELA in a CBP holding cell. When agents went to check on VALENZUELA, he was observed sticking pills which were blue in color down the sewer drain. VALENZUELA was restrained and searched a second time locating more pills on his person, which later tested positive for Xanax. In VALENZUELA's possession was a cellular telephone, $11,000 in U.S. currency, an unspecified quantity of Xanax, and VALENZUELA's wallet containing an Arizona Driver's License, Sonora Mexico Driver's License, and Mexico Voter Identification Card, all of which were in VALENZUELA's name. In VALENZUELA's vehicle were various bottles of steroids and ketamine, along with what VALENZUELA later stated, in a post-arrest Mirandized statement were all of VALENZUELA's belongings.

38. During a post-arrest Mirandized interview, VALENZUELA confirmed that

VALENZUELA drove a red Ford Mustang with Mexico license plates. VALENZUELA informed Agents that he was moving to Mexico to be with his wife and child. VALENZUELA denied shipping pills in the mail or owning any business that sold or mailed pharmaceutical drugs or pills.

      G.    Search of SOTO'S SAMSUNG

39. Pursuant to federal search warrant issued in the District of Arizona, Magistrate Number 22-05740MB(JR), I conducted an extraction of SOTO'S SAMSUNG.

40. In searching through the images saved in SOTO'S SAMSUNG, I located numerous photos of FedEx receipts, shipping labels, and pictures of FedEx computer screens displaying tracking and accounting information. In addition to FedEx shipping labels and receipts, I recovered a photo of five rubber banded stacks of U.S. currency. In my training and experience, the stacks of U.S. currency were rubber banded in a manner consistent with narcotics proceeds.

      H.    Search of QUINTERO'S SAMSUNG

41. Pursuant to federal search warrant issued in the District of Arizona, Magistrate Number 22-05739MB(JR), I conducted an extraction of QUINTERO'S SAMSUNG.

42. In reviewing the extraction, I only located eight WhatsApp conversations. When QUINTERO gave consent to search her phone in August 2021, there were multiple WhatsApp conversations, to include conversations with SOTO and Danny, but they were no longer present. In QUINTERO'S SAMSUNG, I located 2,662 photos of FedEx shipping labels and receipts. Images of FedEx computer screens displaying tracking and accounting information were also found. A picture of a napkin containing the CR Bard account number and a notebook listing 29 FedEx account numbers, including the MKS Instruments Inc. and Panametrics accounts were also found. The photo of the notebook containing the 29 FedEx account numbers was located within a WhatsApp sent images folder. Also located were 89 images of spreadsheets of pharmaceutical

orders listing the type of pharmaceutical, quantity, and a customer name and address. QUINTERO'S SAMSUNG also contained a photo of VALENZUELA's and SOTO's Wells Fargo Platinum debit cards, a photo of a paperclip stack of U.S. currency, a pharmacy script in VALENZUELA's name, and photos of a shipping tracking titled "Azul and "Dany."

43. The 2,662 photos of FedEx shipping labels and receipts recovered from QUINTERO'S SAMSUNG included tracking numbers from the Transvol account with the return sender name "Angel V." In addition, QUINTERO'S SAMSUNG contained photos of both the shipping label and the receipt for parcel 785349336246 that was seized on March 30, 2021 and found to contain five pounds of methamphetamine, as described above.

//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

44. Based on the foregoing, I believe that there is probable cause to believe that between in or about January 1, 2020 through April 6, 2022 in the District of Columbia and elsewhere, Benjamin SOTO, Jr., Angel Adan VALENZUELA, and Refugio Veronica QUINTERO Moreno did conspire to import more than five kilograms of cocaine, more than 500 grams of methamphetamine, and more than 400 grams of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl) into the United States, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii), (F), (H), and 963; and conspired to distribute and possess with intent to distribute methylphenidate (Ritalin), more than five kilograms of cocaine, more than 500 grams of methamphetamine, and more than 400 grams of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), (vi), (viii), and 846.

_____
SA Sean Polson
Federal Bureau of Investigation

Sworn to and subscribed telephonically this 3rd day of February, 2023.

_____
Honorable Robin M. Meriweather
United States Magistrate Judge